UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

HOP HING PRODUCES INC.,

                    Plaintiff,

          - against -                    <u>ORDER</u>

X&L SUPERMARKET, INC., XI LONG CHEN      CV 2012-1401 (ARR)(MDG)
and CHUN YU LIU

                    Defendants.

- - - - - - - - - - - - - - - - - - -X

     In this action brought under the Perishable Agricultural

Commodities Act ("PACA"), 7 U.S.C. § 499a <u>et</u> <u>seq.</u>, plaintiff has

moved for leave to file an amended complaint[1] to add three corporate

defendants, Lin Zhu, LLC ("Lin Zhu"), Shirokia Group, LLC

("Shirokia") and Farmer's Supermarket, Inc. ("Farmer's") and three

individual defendants, Jin Ping Zhu ("Jin Ping"), Yuyao Cai ("Cai")

and Shao Fei-Weng ("Weng"). <u>See</u> Pl.'s Mot. to Amend (ct. doc. 53).

Prospective defendants Farmer's, Cai and Lin Zhu object to the

_____

     [1] As a preliminary matter, I note that I have the authority
to decide plaintiff's motion to amend pursuant to 28 U.S.C.
§ 636(b)(1)(A). <u>See</u> <u>Fielding v. Tollaksen</u>, 510 F.3d 175, 178 (2d
Cir. 2007) (referring to a motion to amend as a non-dispositive
motion that a magistrate judge may decide without the parties'
consent"); <u>Kilcullen v. New York State Dept. of Transp.</u>, 55
Fed.Appx. 583, 584 (2d Cir. 2003) (same); <u>Marsh v. Sheriff of
Cayuga County</u>, 36 Fed.Appx. 10, 11 (2d Cir. 2002) (holding "that
the magistrate judge acted within his authority in denying this
motion to amend the complaint") (citing <u>Maurice v. State Farm
Mut. Auto. Ins. Co.</u>, 235 F.3d 7, 9 n. 2 (1st Cir. 2000)); <u>Hall v.
Norfolk Southern Ry. Co.</u>, 469 F.3d 590, 595 (7th Cir. 2006); <u>U.S.
Dominator, Inc. v. Factory Ship Robert E. Resoff</u>, 768 F.2d 1099,
1102 (9th Cir. 1985). <u>See</u> <u>also</u> <u>Lyondell-Citgo Refining, LP V.
Petroleos De Venezuela, S.A.</u>, No. 02 Civ. 0795 (CBM),
2005 WL 883485, at *3 (S.D.N.Y.) (noting "the weight of authority
in this Circuit applying a clearly erroneous standard of review
to a magistrate's ruling on a party's motion to amend a
pleading").

motion.  <u>See</u> Opp'n of Farmer's and Cai (ct. doc. 56); Opp'n of Lin Zhu (ct. doc. 57).

PERTINENT FACTS

The claims in this action arise from plaintiff's sale of produce to defendant X&L Supermarket, Inc. ("X&L") between February 2, 2012 and March 13, 2012.  Compl. ¶ 6.  Plaintiff alleges that despite repeated demands, X&L failed to pay for the produce.  Compl. ¶ 7. Plaintiff also alleges that X&L has ceased operations.  Compl. ¶ 11. At the time plaintiff filed its complaint on March 22, 2012, X&L owed Hop Hing $84,293.50.  Compl. ¶ 9.  Plaintiff also sued as defendants Xi Long Chen, a/k/a Xi Liang Liu ("Xi Liang") and Chun Yu Liu (Chun Yu"), who  are alleged to be officers of X&L who were in a position of control over PACA trust assets.  Compl. ¶ 4.

Proceeding by order to show cause, the plaintiff sought, and eventually obtained, a preliminary injunction restraining the assets of the defendants and requiring the funds of X&L held by third parties, including funds in bank accounts, to be immediately paid to plaintiff's counsel.  <u>See</u> Preliminary Injunction dated March 30, 2012 (ct. doc. 22).  The defendants neither opposed the plaintiff's motion nor appeared in this action.  Default has been entered against the defendants and this Court has filed a report and recommendation recommending that default judgment be entered against the original defendants in the amount of $35,206.25 for remaining unpaid invoices, plus interest and attorneys' fees and costs.  <u>See</u> ct. doc. 61.

Proposed defendant Lin Zhu first appeared in this action at a show cause hearing at which plaintiff sought to hold Lin Zhu in

contempt of the preliminary injunction for failing to turn over the security deposit it holds with respect to the premises it owns at 41-22 Main Street, Flushing New York ("the Premises") that X&L previously occupied. See ct. doc. 33. Finding that the information presented was insufficient for reaching a decision, this Court has reserved judgment pending further discovery. Besides discovery, plaintiff and Lin Zhu have engaged in extensive settlement negotiations which have not yielded fruition.

Plaintiff now seeks leave to file an amended complaint to join Lin Zhu, two other entities and various individuals alleged to be principals of one or more of these three proposed new entity defendants. See Proposed First Amended Complaint ("Proposed Compl.") (ct. doc. 53, Ex. A). Plaintiff claims that the original defendants and the proposed defendants have, in "a complex and inextricable commonality of ownership and interest," controlled and "secret[ed] PACA trust funds owed to plaintiff." Pl's Mem. to Amend (ct. doc. 54) at 2. Because of the sparseness of the allegations in the Proposed Complaint, the facts presented in the submissions are also discussed.

Proposed defendant Shirokia entered into a lease agreement dated April 23, 2010 with Lin Zhu to occupy the Premises and paid a security deposit of $414,000 to Lin Zhu. Shum Aff. (ct. doc. 53) at ¶ 17; Aff. of Andrew Chan in Opp'n to Mot. for Temporary Restraining Order (ct. doc. 41) at ¶¶ 7-8. Two months later, X&L Supermarket opened for business at the premises. Aff. of Jin Ping (ct. doc. 57-1) at ¶ 3. Shirokia had apparently permitted X&L, a subsidiary, to

occupy the premises.  See Shum Aff. at ¶ 17; Proposed Compl. (ct. doc. 53, Ex. A) at ¶ 4(b).  Lin Zhu subsequently brought an eviction action in state court against Shirokia for non-payment of rent and ultimately obtained a notice of eviction against Shirokia on April 11, 2012.  See Aff. of P.C. Cheng at ¶ 7; Jin Ping Aff.  ¶ 4 (ct. doc. 57-1).

Plaintiff alleges that defaulting defendant Xi Liang was formerly a Managing Member of Lin Zhu, as well as a Managing Member of Shirokia, pointing to an Answer dated August 31, 2011 that he signed on behalf of Shirokia in the state court action initiated by Lin Zhu.  In a corporate resolution of Lin Zhu dated April 23, 2010, the date of the Lin Zhu-Shirokia lease, Xi Liang ceased acting as Managing Member of Lin Zhu and proposed defendant Jin Ping became a Managing Member of Lin Zhu.  See ct. doc. 53, at 27.  Jin Ping signed the rider to the Lin Zhu-Shirokia lease on behalf of Lin Zhu.  See Jin Ping Aff. (ct. doc. 57, 7-9) ¶ 2; Rider to Lin Zhu-Shirokia's Lease (ct. doc. 53, at 29-41).  Defaulting defendant Chun Yu is also a Member of Lin Zhu who, along with three non-parties, signed the Lin Zhu-Shirokia lease as guarantors.  See ct. doc. 53, at 27, 41.

The Premises are currently occupied by proposed defendant Farmer's Supermarket, Inc.  Proposed Compl. (ct. doc. 53) at ¶ 4(c); Rider to Lease between Lin Zhu and Farmer's (ct. doc. 56-2). Proposed defendant Cai is a principal of Farmer's, who signed the lease between Lin Zhu and Farmer's for the Premises.  See Proposed Compl. at ¶ 4(g); Rider to Lin Zhu-Farmer's Lease (ct. doc. 56-2). Jin Ping signed the rider to the lease between Lin Zhu and Farmer's

on behalf of Lin Zhu. <u>See</u> Rider to Lin Zhu-Farmer's Lease (ct. doc. 56-1); ct. doc. 56-3, at 4.

In connection with this lease transaction, proposed defendant Weng signed an agreement dated April 3, 2012 agreeing to indemnify Lin Zhu for liens, judgments or other debts against the Premises, Shirokia or X&L. <u>See</u> ct. doc. 56-3 ¶ 16. The agreement indicates that after a notice of eviction was served against Shirokia, Weng produced an agreement executed by Shirokia surrendering the premises to Lin Zhu. <u>See</u> ct. doc. 56-3, at 2. The agreement also notes that that Cai and Weng formed Farmer's (ct. doc. 56-3, at 2), although Cai denies in his affidavit that Weng was ever an officer, owner or shareholder of Farmer's. <u>See</u> ct. doc. 56-1 ¶¶ 13-14, 19. Lin Zhu has commenced a separate action in this Court against Weng, Farmer's and Cai seeking enforce agreements to indemnify Lin Zhu for liabilities incurred by X&L and Shirokia. <u>See</u> Complaint in <u>Lin Zhu L.L.C. v. Shao Fei Weng, et al.</u>, CV-12-2871 (ARR)(MDG) (ct. doc. 1). Farmer's and Cai allege in their answer that only Weng, who was briefly an officer of Farmer's, but was never in control, signed an indemnification agreement. <u>Id.</u> (ct. doc. 2).

Plaintiff alleges, and the objecting parties do not deny, that Weng is married to defaulting defendant Chun Yu. Proposed Compl. at ¶ 4(h). Cai claims that Weng was a member of Lin Zhu only at the time the Lin Zhu-Farmer's lease was signed. Cai Aff. (ct. doc. 56-1) ¶ 16.

Plaintiff claims that because of the partially overlapping interests of the proposed individual defendants in X&L and/or the

proposed entity defendants, the proposed defendants are liable under PACA. See Pl's Mem. to Amend (ct. doc. 54), at 5. Plaintiff argues, inter alia, that amendment is warranted because 1) Farmer's, Weng and Cai assumed X&L's PACA liability as successors in interest or transferees of PACA funds; 2) Shirokia, as the parent of X&L, controlled X&L's PACA assets and failed to ensure payment mandated by PACA; 3) Shirokia sufficiently dominated X&L to allow the Court to pierce the corporate veil and reach Shirokia's assets, including the security deposit; 4) Lin Zhu had a sufficiently close relationship with X&L to put it on notice that the security deposit was received from PACA trust assets, particularly in light of the fact that the defaulting individual defendants, Chun Yu and Xi Liang, are members of both X&L and Lin Zhu; 5) the security deposit was derived from PACA trust assets received pursuant to the purchase of produce. Ct. docs. 53, 54.

Only proposed defendants Lin Zhu, Cai and Farmer's have filed submissions opposing amendment.

## DISCUSSION

As an initial matter, plaintiff objects to the court's consideration of submissions from Lin Zhu (ct. doc. 57) and Cai and Farmer's (ct. doc. 56). Plaintiff is correct that the standing of prospective defendants to object to a motion to amend is generally considered "dubious" because such motions are "subject to the same standards as motions under Rule 12(b)(6)," that is, without resort to outside evidence. Copantitla v. Fiskardo Estiatorio, Inc., 2010 WL 1327921, at *5 (S.D.N.Y. 2010). However, in the interest of

efficiency and because Lin Zhu has already appeared in this case when it was forced to appear for a show cause hearing, the Court will consider the opposition of Lin Zhu, which has already raised similar arguments earlier in this action. Cf. New York v. Gutierrez, WL 5000493, at *8-9 (E.D.N.Y. 2008) (court considered the submissions of the prospective defendants insofar as they supplement the arguments advanced by the defendants). However, the Court has examined but will not cite to information provided by Cai and Farmer's.

Notably, plaintiff cited documents produced by Lin Zhu in support of its motion. Shum Aff. (ct. doc. 53) ¶ 11, Exs. D (Corporation Resolution of Lin Zhu), E (Rider to Lease Between Lin Zhu and Shirokia), F (Shirokia's Answer to Petition in Queens Civil Court). The Court will consider these documents, which it deems to be "integral" to the complaint because the Proposed Complaint "relies heavily" on them. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Often times the "integral" documents that a court is permitted to examine in this context is "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." Global Network Comm'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). There must be no dispute "regarding the authenticity or accuracy of the document." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). Although plaintiff does not explicitly cite to any documents in the Proposed Complaints, plaintiff explains in its supporting affidavit that the relationships alleged to exist between

defendants and proposed defendants are drawn from these documents. See Shum Aff. at ¶¶ 11-17 (citing in support of the allegations in the Proposed Complaint unspecified documents showing common ownership of X&L and Lin Zhu and operation by Farmer's of a supermarket in the premises formerly occupied by X&L, a lease agreement between Lin Zhu and Farmer's, an indemnification agreement signed by Weng protecting Lin Zhu against judgments or fines leveled against Shirokia or X&L, a corporate resolution of Lin Zhu and a lease between Lin Zhu and Shirokia for the Premises). Since these documents were produced by Lin Zhu and relied upon by plaintiff, there is clearly no dispute as to accuracy or notice of any party.

Since more than twenty-one days elapsed between plaintiff's service of the complaint on defendants and the filing of this motion, plaintiff must obtain leave of the Court before it may amend the complaint. Fed. R. Civ. P. 15(a). Rule 15(a) also specifies that a "court should freely give leave [to amend] when justice so requires." See Krupski v. Costa Crociere S.p.A, 130 S. Ct. 2485, 2496 (2010). However, since plaintiff seeks to add new defendants, determination of plaintiff's motion requires consideration of Rules 20(a) and 21 of the Fed. R. Civ. P.

Rule 20(a) permits a plaintiff to join new defendants in a single action "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." The provisions of Rule 20 should be construed liberally "to promote judicial economy." Myers

v. Dolac, 2011 WL 4553107, at *2 (W.D.N.Y. 2011); <u>see</u> <u>also</u> <u>United</u>
<u>Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 724 (1966) ("[u]nder
the Rules, the impulse is toward entertaining the broadest possible
scope of action consistent with fairness to the parties; joinder of
claims, parties and remedies is strongly encouraged"); 3A Moore's
Federal Practice, ¶ 20.05, at 20-22. The "plaintiff bears the burden
of establishing that the joinder of defendants is proper. . . "
<u>Malibu Media, LLC v. John Does 1-5</u>, 2012 WL 3641291, at *3 (S.D.N.Y.
2012); <u>see</u> <u>also</u> <u>In re: Repetitive Stress Injury Litigation</u>, 11 F.3d
368, 373 (2d Cir. 1993); <u>Nielsen Co. (US) LLC v. Success Systems,</u>
<u>Inc.</u>, 2012 WL 3526625, at *4 (S.D.N.Y. 2012). Rule 21 states that
"[p]arties may be . . . added by order of the court . . . at any
stage of the action and on such terms as are just."

Notwithstanding the somewhat different criteria for joinder,
determinations regarding joinder or amendment are based on the same
equitable considerations ultimately left to the district court's
discretion. <u>See</u> <u>Garland v. RLI Ins. Co.</u>, 491 F.Supp.2d 338, 340-41
(W.D.N.Y. 2007) (court should consider strategic intent behind
proposed joinder, plaintiff's delay, prejudice to the parties and
"other factors bearing on the equities of the proposed joinder)
(internal quotations removed); <u>In re: Initial Public Offering Secs.</u>
<u>Litig.</u>, 214 F.R.D. 117, 119-20 (S.D.N.Y. 2002). Leave to amend
should ordinarily be granted, except where the moving party has
proceeded in bad faith, there is undue prejudice to the other parties
or the amendment would be futile. <u>Burch v. Pioneer Credit Recovery,</u>
<u>Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008) (citing <u>Foman v. Davis</u>, 371
U.S. 178, 182 (1962)).

The proposed defendants who have objected do not claim undue

prejudice or bad faith and this Court finds no showing of either. Instead, the objecting proposed defendants argue that the proposed amended claims against them are futile.

In determining whether a proposed amendment is futile, a court must treat the motion to amend in the same manner as a motion to dismiss, looking only at the face of the complaint, any documents referred or attached to the pleadings, and accepting all the allegations of the complaint as true. See <u>Aetna Cas & Sur. Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 604 (2d Cir. 2005); <u>Idearc Media LLC v. Siegel, Kelleher & Kahn LLP</u>, 2012 WL 162563, *2-*3 (W.D.N.Y. 2012). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." <u>Lucente v. Int'l Bus. Machs.,</u> 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted). Dismissal under Rule 12(b)(6) is, in turn, warranted "only if it appears beyond a doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief." <u>Lamb v. Henderson</u>, 1999 WL 596271, at *2 (S.D.N.Y. 1999) (citations omitted). The decision to grant or deny a request to amend is within the discretion of the district court. See, <u>e.g.</u>, <u>Foman</u>, 371 U.S. at 182; <u>John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994).

The legal standard for analyzing a motion to amend for futility is thus identical to standard for a 12(b)(6) motion to dismiss, which is well established. In order to survive a motion to dismiss, Rule 8 requires that a plaintiff proffer "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

As a preliminary matter, this Court briefly discusses the law concerning PACA pertinent to the instant motion to amend. PACA was passed to protect sellers of produce who must often sell produce quickly on credit before their inventory becomes unsaleable. "The assurance the trust provision gives [is] that raw products will be paid for promptly and that there is a monitoring system provided for under the Act . . ." <u>Nickey Gregory Co. v. AgriCap, LLC</u>, 597 F.3d 591 at 599 (4th Cir. 2010). PACA "requires the purchaser of agricultural commodities to hold any receivables or proceeds from the sale of the commodities 'in trust for the benefit of all unpaid supplies or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received by the suppliers.'" <u>Albee Tomato, Inc. v. A.B. Shalom Produce Corp.</u>, 155

F.3d 612, 615 (2d Cir. 1998) (quoting U.S.C. § 499e(c)(2)). This statute "gives unpaid suppliers . . . priority over secured lenders . . . to PACA trust assets." <u>Albee Tomato</u>, 155 F.3d at 615.

A PACA trust is "made up of perishable agricultural commodities received in all transactions, all inventories of food . . . and all receivables of proceeds from the sale of such commodities . . ." <u>In re Kornblum & Co., Inc.</u>, 81 F.3d 280, at 286 (2d Cir. 1996). There is "a single PACA trust [that] exists for the benefit of all sellers to a Produce Debtor." <u>In re Kornblum</u>, 81 F.3d at 286. A PACA trust "is continuous and exists from the moment produce is received until all suppliers are paid in full." <u>Ger-Nis Int'l, LLC v. FJB, Inc.</u>, 2008 WL 260074 at *4 (S.D.N.Y., 2008); <u>see</u> <u>also</u> <u>J.A. Besteman Co. v. Carter's, Inc.</u>, 439 F.Supp.2d 774, 778 (W.D.Mich. 2006) ("a PACA trust arises when the first PACA debt is incurred and continues thereafter until all sellers are paid in full").

Furthermore, a person such as a corporate officer of a PACA debtor company "who is in a position to control the asserts of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." <u>Cooseman Specialties, Inc. v. Gargiulo</u>, 485 F.3d 701, 705-06 (2d Cir. 2007); <u>see</u> <u>also</u> <u>Weis-Buy Farms, Inc. v. Quality Sales LLC</u>, 2012 WL 2237166, at *2 (D.Conn. 2012). Given this background, this Court will separately discuss all the new claims that plaintiff seeks to bring against each proposed defendant or group of defendants.

***Shirokia Group, LLC.*** Plaintiff seeks to join Shirokia, the corporate parent of X&L, because Shirokia was in a position to

control the PACA trust assets of X&L and failed to ensure payment to PACA trust beneficiaries. Pl.'s Mem. (ct doc. 58) at 4. No opposition has been filed to amendment and joinder of this defendant, and plaintiff's allegations that Shirokia "is . . . the parent company of X&L" and "transferred $414,000 to Lin Zhu as a security deposit . . . for X&L's benefit," Proposed Compl. ¶¶ 4(b), 27, is sufficient to plausibly suggest Shirokia's liability for X&L's PACA debt. This Court agrees that amendment is appropriate against Shirokia, which furthermore signed a lease with Lin Zhu and presumably controlled the assets and income of X&L in order to pay rent for the Premises.

**_Lin Zhu LLC._** Contending that Lin Zhu and X&L have "common ownership" and "a unity of interest," plaintiff argues that it has a right to recover the security deposit paid by Shirokia it holds. Pl.'s Mem. (ct doc. 58) at 5. Plaintiff alleges in its proposed complaint that "X&L, Lin Zhu, and Shirokia were so interrelated by virtue of Xi Lang [sic] and Chun's management and control of the operations that Shirokia and Lin Zhu are alter-egos of defendant X&L." Proposed Comp. ¶ 24. However, such a conclusory allegation of domination and control does not suffice "to overcome the presumption of separateness afforded to related corporations." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 195 (2d Cir. 2010) (finding the allegation that "[s]ince operations began in Nigeria in 1958, Shell has dominated and controlled SPDC" does not "satisfy the Iqbal requirement to plead facts that plausibly support an inference that would justify disregard of the corporate form or a finding of an

agency relationship"); see also Apex Maritime Co., Inc. v. OHM Enterprises, Inc., 2011 WL 1226377 at *2 (S.D.N.Y. 2011) (finding that "unadorned invocation of dominion and control simply not enough" to meet the liberal pleading standard of Rule 8(a) without factual allegations to support the conclusion that the individual defendants exercised dominion and control over two corporations) (quoting In re Currency Conversion Fee Antitrust Litig., 265 F. Supp.2d 385, 426 (S.D.N.Y. 2003)).

In addition, plaintiff has not stated a plausible claim that Lin Zhu is liable for the PACA debts of X&L by virtue of holding the security deposit. In analyzing whether a third party is liable for PACA debts, courts undertake a two-part analysis: 1) whether the transfer of assets was a breach of the PACA trust, Coosemans Specialties, 485 F.3d at 706 and 2) whether the third party transferee should be liable for the breach. American Banana Co., v. Republic National Bank, 362 F.3d 33, at 41 (2d Cir. 2004) ("The first issue is whether the trustee is liable for dissipating the trust by using trust assets to pay non-PACA creditors. The second issue is whether the bank is liable for receiving funds . . ."); see also Eastern Potato Dealers, Inc. v. TNC Packing Corp., 2011 WL 2669632, at *12 (W.D.N.Y. 2011) ("a third party who receives PACA trust property is not liable to the trust beneficiaries, unless the PACA trustee's act in giving the property was breach of trust, and unless the third party had notice of the breach").

For the first question, the court must determine whether the transferred assets were PACA assets. As a general matter it is the

burden of the PACA debtor, or the person potentially holding the PACA assets, to establish that funds were not PACA assets. A PACA trust consists of "a single, undifferentiated trust for the benefit of all sellers or supplies of Produce." In re Kornblum, 81 F.3d at 286; see also D.M. Rothman & Co. v. Korea Commercial Bank, 411 F.3d 90, 96 (2d Cir. 2005) ("a PACA trust is automatically established each time a broker or merchant purchases perishable commodities upon credit"). The trust "continues in existence until all of the outstanding beneficiaries have been paid in full." In re Kornblum, 81 F.3d, at 286. In order to prove that funds were not trust assets, a debtor (or transferee) must establish that (1) "no PACA trust existed" when funds were expended; (2) "even though a PACA trust existed at that time," the funds expended were not trust assets; or (3) "although a PACA trust existed" when funds were expended, the debtor "thereafter paid all unpaid sellers in full prior to the transactions" involving the suing PACA creditors, "thereby terminating the trust." Id., at 287

There is no dispute that the security deposit was paid upon signing of the lease with Shirokia in April 2010, which was two months before X&L commenced operations at the Premises. Aff. of Jin Ping at ¶¶ 3-4 (ct. doc. 57-1). Under the lease, Lin Zhu had the right to keep the security deposit in a non-interest bearing unsegregated account. See Shum Aff. (ct. doc. 53), Ex. E ¶ 74 (Lin Zhu-Shirokia Lease). Although plaintiff argues that "X&L is not the only supermarket run by defendant Xi Liang" (ct. doc. 54 at 5), the only other supermarket mentioned by plaintiff is Farmer's, which took

over the Premises in April 2012.  Both X&L and Farmer's did not begin

operations at the Premises until <u>after</u> the deposit was paid.  In

addition, the security deposit apparently did not increase, as the

rent remained constant for the term of the Lin Zhu-Shirokia lease.

<u>See</u> Shum Aff. (ct. doc. 53), Rider to Lease ¶ 41.  Thus this Court

finds on the record presented that when the security deposit was paid

by Shirokia to Lin Zhu, the funds used were not derived from

transactions covered by PACA.  Accordingly, the security deposit was

not part of a PACA trust when it was paid under the lease.  While

this Court recognizes that under New York law a security deposit

remains the property of a tenant until there is a default,[2] what is

_____

[2]N.Y. Gen. Ob. Law § 7-103(1), pertaining to real estate,
states:

> Whenever money shall be deposited or advanced on a contract
> or license agreement for the use or rental of real property
> as security for performance of the contract or agreement or
> to be applied to payments upon such contract or agreement
> when due, **such money**, with interest accruing thereon, if
> any, until repaid or so applied, **shall continue to be the
> money of the person making such deposit** or advance and shall
> be held in trust by the person with whom such deposit or
> advance shall be made and shall not be mingled with the
> personal moneys or become an asset of the person receiving
> the same, but may be disposed of as provided in section
> 7-105 of this chapter.

<u>See</u> <u>also</u> <u>Rivertower Assocs. v. Chalfen</u>, 153 A.D.2d 196, 199, 549
N.Y.S.2d 719, 721 (1st Dep't 1990) (security deposit "remains the
property of the tenant unless and until he has defaulted in his
obligations under the lease. . . Upon such default, of course,
the deposit may be used to offset actual damages . . ."); <u>Hoffman
v. Farucci</u>, 31 Misc.3d 127(A) at *1, 926 N.Y.S.2d 344 (Table)
(N.Y.Supp. 2011) ("While a tenant's security deposit . . . is the
property of the person making the deposit, upon a default by the
tenant, the deposit may be used by the landlord as an offset
against amounts owed to the landlord") (internal citation
omitted).

critical is that the funds for the security deposit were not PACA trust assets at the time of payment.

Plaintiff finds telling that a corporate resolution of Lin Zhu dated April 23, 2010 authorizing the execution of a lease with Shirokia was executed by both Chun Yu and Xi Liang and lists the Premises as the place of business of Lin Zhu. Shum Aff. at ¶ 16. This Court disagrees with plaintiff's contention that the resolution "inextricably links Xi Liang to X&L's landlord, Lin Zhu" in a manner sufficient to give rise to PACA liability. The resolution was signed by seven other individuals and one limited liability corporation and, significantly, clearly stated that Xi Liang was relinquishing his role as managing member and would no longer have authority to act on behalf of this company. Shum Aff. (ct. doc. 53), Ex. D. This Court observes that two other members of Lin Zhu who signed the corporate resolution, Li-Yik Wong and Mei Mui Hsia, also guaranteed the lease between Lin Zhu and Shirokia. However, there are six other members of Lin Zhu who are not alleged to have a role or interest in Shirokia or X&L and two other guarantors of the lease who are not alleged to have a role or interest in X&L or any of the proposed defendants.

Plaintiff also argues in its reply that because Lin Zhu applied the security deposit it held to pay outstanding rent and real estate taxes, Lin Zhu had violated the preliminary injunction order by dissipating PACA trust assets. However, again, the critical issue is whether the security deposit was derived from PACA trust funds and the timing of the use of the funds by Lin Zhu does not change the this Court's conclusion that the deposit was not a PACA trust asset

when originally paid.  Plaintiff is mistaken in its reliance on <u>Frio Ice v. Sunfruit, Inc.</u>, 918 F.2d 145 (11th Cir. 1990).  That case concerned the equitable power of the Court to require a PACA debtor and its principals to create a segregated trust account.  <u>Id.</u>  A PACA debtor indisputably has the obligation to hold assets in trust for PACA creditors.  Despite the suggestion of relationships arising from Xi Liang's membership in X&L, Shirokia and Lin Zhu, and other connections between the proposed defendants, there is no credible allegation Lin Zhu, itself, is a PACA debtor.

In addition, even if the security deposit were assumed to be a trust asset, Lin Zhu could not be liable as a third party for dissipation of trust assets, unless there are allegations that a PACA trustee (presumably Shirokia or X&L) tranferred the funds to Lin Zhu in breach of a PACA trust, <u>and</u> Lin Zhu had notice of the breach.  <u>See Albee Tomato, Inc. v. A.B. Shalom Produce Corp.</u>, 155 F.3d 612, 616 (2d Cir. 1998); <u>Eastern Potato Dealers, Inc. v. TNC Packing Corp.</u>, 2011 WL 2669632, at *12 (W.D.N.Y. 2011) (citing <u>E. Armata, Inc. v. Korea Commercial Bank of New York</u>, 367 F. 3d 123, 129, n. 7 (2d Cir. 2004)).  Plaintiff alleges only that by virtue of common ownership with X&L, Lin Zhu "knew or should have known that said [security deposit paid] were made in breach of X&L's statutory trust obligations."  Proposed Comp. at ¶ 29.  For the same reason that the bare allegations of common control is not sufficient to give rise to alter ego liability, this allegation of an unspecified degree of common ownership lacks the detail for a plausible inference of knowledge on the part of Lin Zhu.  In conclusion, plaintiff does not

plausibly allege that in receiving the security deposit, Lin Zhu has breached the PACA trust.

**_Yuyao Cai, Shao Feng Weng, Jin Ping Zhu and Farmer's Supermarket Inc._**

A. <u>Successor Liability</u>

Plaintiff argues that Farmer's and its members "are liable as successors in interest [to X&L] and as transferees of PACA trust assets..." Pl.'s Mem. at 3. Specifically, plaintiff contends that Farmer's is run by Weng, defaulting defendant Chun Yu's husband, and that the corporation is using the fixtures formerly owned by X&L. Shum Aff. (ct. doc. 53) at ¶ 12; Proposed Compl. at ¶ 4(g)-(h) (stating that Jin Ping, Weng and Cai are "are members of Farmer's, in a position of control of that company"). Setting aside whether or not the fixtures belong to Lin Zhu, plaintiff does not make sufficient factual allegations that the fixtures were purchased in breach of the PACA trust. To the contrary, just as the security deposit was paid prior to commencement of business operations by X&L, the fixtures were likely to have been installed prior to time X&L opened for business. Therefore, plaintiff has not plausibly alleged that Farmer's, or any party, purchased fixtures from X&L in breach of the PACA trust.

Plaintiff also argues that various documents "inextricably connect" Lin Zhu, X&L, Farmer's and defaulting defendant Chun Yu and that Chun Yu "is a principal, directly and through her husband Weng, in all of them." Shum Aff. at ¶ 15. While plaintiff is correct that the original defendants and some proposed new defendants have some

intertwined relationships and interests, the evidence of overlapping memberships in X&L, Shirokia, Lin Zhu and Farmer's and are also not sufficient in themselves to give rise to liability against Cai, Jin Ping and Farmer's.

Under New York law, a corporation that acquires the assets of another is generally not liable for the seller's debts. <u>Aquas Lenders Recovery Grp. v. Suez, S.A.</u>, 585 F.3d 696, 702 (2d Cir. 2009). However, under both New York state law and common law, a corporation that purchases the assets of another is nevertheless liable for the seller's liability where "(1) [the successor] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." <u>N.Y. v. Nat'l Serv. Indus., Inc.</u>, 460 F.3d 201, 209 (2d Cir. 2006). One court in this circuit, proceeding under California law,[3] explained that "[t]he first ground for holding an entity as a successor in interest of another asks whether than entity assumed the specific liability at issue." <u>Software Freedom Conservancy, Inc. v. Best Buy Co.</u>, 2010 WL 4860780, at *4 (S.D.N.Y. 2010). Regardless of which basis for successor liability a party seeks to invoke, "precedent emphasizes the acquisition of assets." <u>Time Warner Cable, Inc. v. Networks Group, LLC</u>, 2010 WL 3563111, at

---

[3] New York law and California law are "substantially similar" on the determination of successor liability. <u>Hinds Cty. v. Wachovia Bank N.A.</u>, 708 F.Supp.2d 348, 363 n. 10 (S.D.N.Y. 2010).

*7 (S.D.N.Y. 2010) (citing <u>Aquas Lenders</u>, 585 F.3d at 702).

Courts have not often discussed successor liability in the context of PACA matters. However, the scant discussion that does exist confirms that, if established, successor liability may impose PACA liability on a successor to a PACA debtor. <u>See</u> <u>Sequoia Sales, Inc. v. P.Y. Produce, LLC</u>, 2011 WL 3607242, at *5-*6 (N.D.Cal. 2011) ("substantial continuity" test established that "Chopper's is a continuation of P.Y. and as such, is liable as P.Y.'s successor"); <u>accord</u> <u>H.C. Shmieding Produce, Co. v. Alfa Quality Produce, Inc.</u>, 2008 WL 4443278, at *1 (E.D.N.Y. 2008) (summary judgment denied where "the extent of Fraggetta's role in both [debtor] and [successor], and the relationship between the companies, present issues of material fact").

Plaintiff's allegations that Farmer's is using fixtures that previously belonged to X&L, is located in the same premises as X&L and did not pay consideration for business assets of X&L, Proposed Compl. ¶¶ 37-38, fall far short of pleading a plausible claim of successor liability. While Farmer's now operates a supermarket at the Premises, there is no allegation that Farmer's has done so through merger, consolidation or otherwise. Nor has plaintiff alleged that Farmer's has assumed the liability of X&L or Shirokia or that the latter two entities fraudulently entered into a transaction with Farmer's.

As to the other individuals alleged to be members of Farmer's, plaintiff merely makes the conclusory allegation that Weng, Cai and Jin Ping are "in a position of control of that company, and directly

-21-

benefit from PACA trust assets in the possession of Farmer's, formerly belonging to X&L." <u>See</u> Proposed Complaint (ct. doc. 53, at 12), ¶ 4(g). Such an allegation is insufficient to plead successor liability and plaintiff's attempt to find significance in the personal and financial relationships among these defendants does not correct the deficiency.

     B.  <u>Personal Liability</u>

As noted, plaintiff's Proposed Complaint alleges that "Defendants Jin [Ping], Weng and [Cai] are, upon information and belief, members of Farmer's, in a position of control of that company, and directly benefit from PACA trust assets in the possession of Farmer's formerly belonging to X&L" and that Farmer's is "run by Weng." Proposed Compl. at ¶¶ 4(g), 36. As such, plaintiff alleges that the individual defendants are personally liable for X&L PACA debt, in addition to the liability of Farmer's and the other corporate defendants.

Although courts have found individuals personally liable under PACA based solely on that individual's status as a sole shareholder, owner, officer or director of a PACA debtor corporation, in cases involving multiple officers or shareholders, conclusory and undetailed allegations of control by individuals over PACA trust assets are insufficient to plausibly suggest personal liability. <u>See Avanti Enterps. v. A&T Produce, Inc.</u>, 2010 WL 3924771, at *4 (E.D.N.Y. 2010) (declining to accept conclusory allegations of complaint for purposes of default judgment), <u>adopted by</u> 2010 WL 3909243 (E.D.N.Y. 2010); <u>Mikey's Choice LLC v. Fabos LLC</u>, 2010 WL

935550, at *2 (E.D.N.Y. 2010), adopted by 2010 WL 934260 (E.D.N.Y. 2010) (complaint insufficient to impose default liability which contains "conclusory assertions, made in identical form with respect to each individual defendant . . . upon information and belief"); Andrew Smith Co. v. Paul's Pak, Inc., 2009 WL 765687, at *5 (N.D. Cal. 2009) (motion to dismiss granted where plaintiff merely alleged that individual defendants were "'individual shareholders, officers, or directors' who would control the PACA assets" and such conclusory allegations were contradicted by other allegations about which individuals controlled which corporations); compare with Weis-Buy Farms, Inc. v. Quality Sales LLC, 2012 WL 2237166, at *3 (D. Conn. 2012) (motion to dismiss denied where plaintiff "did plainly allege that [defendant] was in control of the operations . . . and that he had the right and authority to control the operations").

Plaintiff fails to make any specific allegations regarding the roles of the individual defendants at Lin Zhu, Shirokia or Farmer's such that they retain control over PACA trust assets.  The allegations against these individuals are largely identical and do not suggest any specific positions held or actions undertaken by defendants that led to dissipation of PACA trust assets.  See Avanti Enterps, 2010 WL 3924771, at *5; Mikey's Choice, 2010 WL 935550, at *2.  Moreover, plaintiff provides no information in support of its motion regarding the role of Jin Ping, who signed the lease for the Premises on behalf of Lin Zhu, in controlling Farmer's.  Insofar as plaintiff mistakenly intended to sue Jin Ping as a principal of Lin Zhu, that claim is also deficient for the same reason discussed above

with respect to Lin Zhu.

However, as to proposed defendant Weng, even though not pled in plaintiff's proposed Complaint, the submissions make clear that Weng did agree in writing to indemnify Lin Zhu as to X&L and Shirokia's liability. Because plaintiff may have a viable claim against Weng based on the agreement, plaintiff is permitted to assert a claim, with appropriate allegations, in an amended complaint.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiff's motion for leave to file an amended complaint is granted as to Shirokia Group, LLC and and Shao Fei-Weng and denied without prejudice as to Lin Zhu, LLC, Farmer's Supermarket, Inc., Jin Ping Zhu and Yuyao Cai.

A revised amended complaint must be filed by April 5, 2013.

**SO ORDERED.**

Dated:    Brooklyn, New York
          March 26, 2013

                          /s/_____
                          MARILYN D. GO
                          UNITED STATES MAGISTRATE JUDGE